# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LARKIN, Minors.

UNPUBLISHED
May 5, 2016

No. 329173
Oakland Circuit Court
Family Division
LC No. 14-818589-NA

Before: MURRAY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to the minor children under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist).[1] We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In April 2014, petitioner, the Department of Health and Human Services ("DHHS"), filed a petition for removal of the minor children from respondent's care. The petition alleged that the trial court should exercise jurisdiction over the children under MCL 712A.2(b) because of (1) respondent's inability to properly care for and supervise the children due to her prescription drug use, and (2) unsafe living conditions in the home, including, *inter alia*, "large amounts of dirty dishes, large amount[s] of old and rotten food on the counters throughout the home, dog feces . . . in multiple locations in the home, . . . a broken window [with only a blanket covering it]," rotten carpet and floors, filthy furniture, and excessive debris, which prevented Oakland County Sheriff's Deputies from walking through the house.

The petition alleged that the family had an extensive history with Children's Protective Services ("CPS"), which included two open, "high risk" cases arising from physical abuse and unsafe home conditions. Additionally, the petition alleged that the family already had received services in both CPS cases and was working with Easter Seals when the petition was filed. The

---

[1] The trial court also terminated the parental rights of the children's father, but he is not a party to this appeal. Thus, we will refer to respondent-mother as "respondent" in this opinion. Where relevant, we will refer to the child's father as respondent-father and both parents jointly as "respondents."

petition also alleged that the family allowed multiple squatters to live in the family home, including at least one individual with an extensive criminal history, and that respondent was currently being investigated for alleged retail fraud. Following a preliminary hearing, the trial court authorized the petition.

Later that month, respondent pleaded no contest to the allegations in the petition. The trial court accepted respondent's plea, finding that a sufficient factual basis existed to conclude that the children came within the jurisdiction of the court under MCL 712A.2(b)(1) and (2). Respondent was ordered to submit to random drug screening and participate in parenting classes as well as supervised visitation with the children.

At a dispositional hearing in June 2014, respondent was ordered to comply with her parent/agency agreement ("PAA"), under which she was required to attend substance abuse counseling, attend parenting classes, participate in parenting time, secure a legal source of income, obtain suitable housing, participate in individual therapy, participate in anger management classes if her individual therapy did not include such a component, and submit to random drug screens. As further discussed *infra*, in the year following the filing of the initial petition, respondent largely failed to comply with or benefit from the court-ordered services and failed to rectify the conditions leading to adjudication.

In March 2015, petitioner filed a supplemental petition seeking the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (3)(j) (reasonable likelihood of harm). At a statutory basis hearing in May 2015, respondent pleaded no contest to the allegations in the termination petition. After hearing testimony from one of the caseworkers assigned to the case, the trial court found that petitioner had proven, by clear and convincing evidence, that a statutory basis for termination existed under MCL 712A.19b(3)(c)(*i*), but not (3)(j). Following a best interests hearing in August 2015, the trial court found, by a preponderance of the evidence, that termination of respondent's parental rights was in the best interests of the children. The court also found that petitioner made reasonable efforts to return the children to respondent and reunify the family, but those efforts were unsuccessful. Accordingly, it entered an order terminating respondent's parental rights on August 20, 2015.

## II. SUFFICIENCY OF REUNIFICATION EFFORTS

Respondent's sole contention on appeal is that petitioner failed to make reasonable efforts to reunify the family, thereby violating her due process rights. In particular, respondent argues that petitioner failed to make reasonable efforts because it failed to offer housing services and failed to timely facilitate an alternative method and location for respondent's drug screens. We disagree.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

To preserve an issue regarding the adequacy of the services provided during child protective proceedings, a respondent must object or otherwise raise the issue when the services are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012) ("The time for asserting the need for accommodation in services is when the court adopts a service plan . . . .") (quotation

marks and citation omitted). Likewise, a respondent fails to preserve her challenge to a case service plain if she waits until late in the proceedings to challenge the services offered. See *id*.; cf. *In re Terry*, 240 Mich App 14, 26-27; 610 NW2d 563 (2000).

Respondent neither objected nor otherwise raised an issue in the trial court regarding the adequacy of housing-related services offered during the proceedings. However, respondent raised the issue of her inability to complete drug screens without an alternative testing method and requested additional services in that regard. Thus, this issue is arguably preserved. We review for clear error the trial court's decision that petitioner made reasonable efforts to reunify the family. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

"A natural parent has a fundamental liberty interest in the care, custody, and management of his child that is protected by the Fourteenth Amendment of the United States Constitution." *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (quotation marks and citation omitted). "In Michigan, procedures to ensure due process to a parent facing removal of his child from the home or termination of his parental rights are set forth by statute, court rule, DHS policies and procedures, and various federal laws discussed below." *Id*. at 93. Accordingly, by statute, "when a child is removed from the parents' custody, the petitioner is [generally] required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App at 542, citing MCL 712A.18f(1), (2), and (4); see also *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009); MCL 712A.19a(2). Reasonable efforts to reunify parents and children must be made "in all cases" except those involving aggravated circumstances that are not present here. MCL 712A.19a(2); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). When petitioner fails to offer services or provide a reasonable opportunity for a respondent to participate in services, the result is a gap in the evidentiary record that renders termination of parental rights improper and premature. *In re Mason*, 486 Mich at 152, 158-160.

However, "[w]hile the DH[H]S has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. When a respondent fails to adequately participate in, and benefit from, services that are actually offered by petitioner, she is not entitled to claim that petitioner was required to provide additional services. See *id*.

## B. ANALYSIS

Reasonable efforts were made to rectify the conditions that led to adjudication and reunify respondent with her children.

### 1. HOUSING SERVICES

First, as respondent contends, the record shows that petitioner provided limited, if any, housing-related assistance to respondent. However, given the representations of respondent and respondent-father throughout the proceedings, and the fact that respondent never requested housing assistance, the record includes no basis for concluding that petitioner should have realized that housing services were necessary. Both respondents repeatedly indicated that they

were making progress toward securing safe and stable housing throughout the pendency of the child protective proceedings.

At the June 4, 2014 dispositional hearing, the parties acknowledged on the record the problems that needed to be addressed in respondents' home so that it would be safe for the children. During the hearing, a Lutheran Social Services caseworker assigned to this case stated that she had brought "some community resources that may be able to help with" fixing the home.[2] At that time, respondent did not indicate that housing-related services were required or requested.

At the September 8, 2014 hearing, the same caseworker indicated that she had been unable to perform a home assessment due to (1) respondent's failure to maintain contact with her or return her phone calls, and (2) the fact that no one was home when she subsequently attempted to perform an unannounced home assessment. However, respondents, individually and through their counsel, stated that they had fixed two broken windows, that "the inside of the house is fine," that respondent-father had been using as much of his income as possible to fix up the house, and that "[t]he only thing[s] left [to fix] are two broken windows." These statements clearly indicated purported progress toward rehabilitating the home.

By December 2014, respondents had "let the house go" because they believed that the neighborhood was not an appropriate place for their children. As a result, they were staying with a neighbor in the same trailer park as their former home. Despite this situation, at the December 1, 2014 hearing, respondent-father's attorney indicated, "[Both respondents] have the possibility of . . . housing, and hopefully by the time we come back for the next hearing housing will be in place." Likewise, both respondents personally stated on the record that they planned to move out of the trailer park in approximately one month.

At the February 18, 2015 permanency planning hearing, a Lutheran Social Services caseworker indicated that she learned that respondents had been forced to leave the neighbor's trailer on December 10, 2014, and that they subsequently moved into a hotel, but neither respondent directly notified her of that development or notified her that their phone number had changed. The caseworker later discovered that they had moved into a different hotel on January 25, 2015. Despite this apparent housing instability, however, respondent-father's attorney again stated in the trial court, "They have prospects of an apartment. They should be able to move out of their motel fairly soon."

Shortly thereafter, the termination petition was filed on March 2, 2015. "Petitioner . . . is not required to provide reunification services when termination of parental rights is the agency's goal." *In re HRC*, 286 Mich App at 463.

On this record, petitioner did not act unreasonably in omitting housing-related services given respondents' representations to the trial court and the fact that respondent never requested such assistance. This is especially apparent in light of the numerous other services offered by

---

[2] The nature of these community resources is not apparent from the record.

petitioner, both in this case and in previous CPS cases, including the Families First program, PACE substance abuse assessments, family team meetings, case conferences, parenting classes, substance abuse classes, parenting time, individual therapy, and anger management classes.

## 2. DRUG SCREENING

The record also shows that petitioner made sufficient efforts to ensure that respondent was provided with suitable drug screening services. Respondent claims that petitioner did not make reasonable efforts in this case because it was late in providing accommodations for her social phobia and it refused to provide Forensic Fluids testing once she moved away from Oakland County. The gravamen of respondent's argument is that petitioner failed to consistently provide an alternative drug testing method, *i.e.*, mouth swab tests as opposed to urine tests, in a timely manner after it became aware of her condition at the June 4, 2014 dispositional hearing.

First, it is apparent that petitioner's purported lack of effort between June 2014 and September 2014 was inconsequential and did not result in a gap in the evidentiary record. See *In re Mason*, 486 Mich at 158-160. Respondent expressly admitted at the review hearing on September 8, 2014, that she had been using prescription drugs, for which she did not have a prescription, since the last review hearing on June 4, 2014, and that she would have failed any drugs screens if she had participated in them.

Following the September 8, 2014 hearing, the record shows that petitioner provided information to respondent in November 2014 regarding Forensic Fluids screens in Oakland County after it received a letter from respondent's doctor confirming that respondent cannot perform urine tests due to her social phobia. Respondent confirmed at the hearing that she had no issue with performing mouth swab tests for her drugs screens. Nevertheless, respondent did not sign up to begin the Forensic Fluids screenings until December 24, 2014.

Then, even though she had signed up for Forensic Fluids screenings, respondent missed every screen between December 24, 2014, and the permanency planning hearing on February 18, 2015. While respondent emphasizes on appeal that she moved from Oakland County to Lapeer County during this time period, the move occurred only two and a half weeks before the hearing, during which time respondent failed to keep in touch by phone with the Lutheran Social Services caseworker. At the hearing, the court ordered the caseworker to contact DHHS about finding an alternative testing site in Lapeer County, but, as the trial court recognized, the location of the services was only a recent issue. Thus, it is apparent that the majority of the missed drug screens between November 2014 and February 2015 were due to respondent's own lack of initiative.

Following the February 18, 2015 hearing, the caseworker attempted to locate a closer testing site that was under contract with DHHS, but her attempts were unsuccessful as of March 5, 2015. Contrary to respondent's characterization of the record on appeal, petitioner never *refused* to provide Forensic Fluids testing after she moved to a different county. Rather, respondent was informed that the only available testing sites were in Oakland County. Further, it is noteworthy that the caseworker testified at the best interest hearing in August 2015 that respondent began completing Forensic Fluids screens *after* she completed an inpatient drug rehabilitation program on June 21, 2015.

On this record, especially given respondent's complete failure to participate in the alternative drug screens offered by petitioner between November 2014 and February 2015 before she moved to Lapeer County, it is clear that respondent failed to fulfill her "commensurate responsibility . . . to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. Because she failed to adequately participate in, and benefit from, services that were actually offered by petitioner, she arguably is not entitled to claim on appeal that petitioner was required to provide additional services. See *id*.

Furthermore, in determining whether reasonable efforts were made in this case, we may consider whether respondent would have fared better had petitioner offered additional services. See *In re Fried*, 266 Mich App at 543. At the best interests hearing, respondent testified that she had entered a rehabilitation program earlier in 2015 and had only been clean for 76 days, *i.e.*, since June 21, 2015. Likewise, the caseworker testified that respondent had made some progress on her substance abuse issues *in the two months* prior to the best interests hearing on August 6, 2015, during and after respondent had admitted herself to the drug rehabilitation program. Given this testimony, there is no indication that "petitioner's efforts toward reunification were not reasonable, and, more to the point, [there is no indication] that respondent would have fared better if [petitioner] had offered . . . additional [drug screening] services to h[er]" earlier in the proceedings. *Id*. at 543. Likewise, given the evidence in the record, petitioner's failure to facilitate alternative drug screens near respondent's residence between February 2015 and June 2015 does not undercut the adequacy of the evidence demonstrating that termination of respondent's parental rights was in the best interests of the children. See *In re Mason*, 486 Mich at 152, 158-160; *In re Fried*, 266 Mich App at 541; *In re Newman*, 189 Mich App 61, 66-69; 472 NW2d 38 (1991).

Finally, as stated *supra*, the record reveals that respondent was offered numerous services prior to the filing of the termination petition as well as throughout the entire pendency of this case. Petitioner's efforts in this case were reasonable under the circumstances, and the trial court did not clearly err in so finding. See *In re Fried*, 266 Mich App at 542-543. Accordingly, we find no basis for concluding that respondent's due process rights were violated in this case.

## III. CONCLUSION

The trial court did not clearly err in concluding that petitioner provided reasonable efforts to reunify respondent with the children. Likewise, there is no basis for concluding that the extent of petitioner's reunification efforts in this case violated respondent's due process rights.

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan

-6-